The demand pleaded in the cross libel may be properly set up as a defense in the original suits. In so holding, I base my opinion, not alone upon the fact that the agreement for towage service is contained in the same written instrument which contains the agreement under which the libelants worked as stevedores, but also upon the fact that the contract is by its own terms founded upon the mutual promises of the respective parties as its consideration, and there is no other consideration to make the obligations of each party binding, except the sum of one dollar paid by each to the other, which, in effect, leaves the contract to rest entirely, as to consideration, upon the mutual promises of the parties. The agreement, therefore, of the libelants to supply tug boats to perform towage services is the consideration for the agreement of the cross libelant to employ the libelants and pay them for loading the vessels, and a demand for damages resulting from a breach of the contract to perform towage services is clearly a counterclaim arising out of the same cause of action for which the original libels were filed. The exceptions to the cross libel will be overruled, and an order will be entered requiring the libelants to give security in favor of the cross libelant to the amount of $25,000, and proceedings in the original suits will be stayed until the security is given.

---

## THE CRESCENT.

·(District Court, D. New Jersey. June 27, 1898.)

1. MARITIME LIENS—STATE STATUTES—PRIORITIES.
    A lien under a state statute, for work and materials furnished in the home port, takes precedence of a mortgage executed after the work was completed.
2. SAME—WAIVER—TAKING NOTE.
    The rule that a note taken for the amount of a maritime lien for repairs is presumptively taken as collateral security, and does not, of itself, defeat the lien, applies to the case of a lien acquired under a state statute.

This was a libel by Henry M. Sciple and others against the proceeds arising from the sale of the steamer Crescent, to enforce a lien for work done and materials furnished.

Harrison H. Voorhees, for petitioners.
Howard Carrow, for intervening petitioner.

KIRKPATRICK, District Judge. The petitioner, Sciple, claims a lien for work done and materials furnished the steamer Crescent in April, May, June, July, and September, 1896, which became a part of the vessel, and were furnished on the credit of the boat and master at her home port in New Jersey. They claim a lien by virtue of the state statute which provides that "for work done or materials or articles furnished in this state for or toward the building, repairing, filling, furnishing or equipping such ship or vessel," the debt incurred therefor "shall be preferred to all other liens thereon, except mariner's wages." 2 Gen. St. p. 1966, § 46. Charles Betchner intervenes for his own interest, as the holder of a mortgage on the steamer.

dated September 28, 1896, by virtue of which he claims to be entitled to a preference in payment over petitioner Sciple. Both claims are liens by virtue of the state law, and their respective priorities must be determined by it. The work was done prior to the date of the mortgage, and the lien attached when the work was completed. Betchner, in his answering petition, contends that the Sciple lien was merged in a mortgage upon the vessel, which was registered subsequent to his own. The proofs fail to substantiate this claim. It appears from the evidence that notes were accepted for the greater part of the debt incurred to Sciple, but they were not paid. "The acceptance of notes by persons entitled to maritime lien for repairs does not defeat the lien. There is a presumption that the note is only taken as collateral security." The Ella, 84 Fed. 471. There is no reason why the same principle should not apply where the lien is given by state statute. As between Betchner, the holder of a mortgage given subsequent to the time when the work was done and materials furnished by petitioner Sciple, the latter is entitled to priority of payment.

----

### THE PACTOLAS.

(District Court, S. D. New York.  June 21, 1898.)

SEAMEN—SHORT ALLOWANCE—SCURVY—PROOF INSUFFICIENT.

Upon claims for damages for short allowance and alleged consequent scurvy, on a voyage from Shanghai and Manilla to New York, *held* not sufficiently established by the evidence.

George Whitefield Betts, Jr., for libelants.

Wm. M. Ivens, Harrington Putnam, and E. W. Ivens, for respondents.

BROWN, District Judge. Two libels have been filed in this matter by 13 seamen on board the Pactolas on a voyage from Shanghai and Manilla to New York, to recover compensation for short allowance of provisions, and damages for alleged scurvy arising from this cause. The first libel was filed by 11 of the seamen against the Pactolas in rem, and the other by 2 of the crew against the owners in personam. The answer denies all the charges of the libel.

A very considerable amount of evidence has been taken, including also the testimony of various medical experts as respects the disorder from which several of the seamen were suffering on arrival at New York. The clear preponderance of the medical evidence is that the disorder was beriberi and not scurvy, except possibly in the cases of Olsen and Smith, who showed some symptoms of swelling and bleeding gums and loose teeth, if their testimony is to be believed, which might possibly indicate scurvy; but their recovery in two or three days seems hardly consistent with this theory.

As respects the provisions and any complaints by the seamen, the evidence is very contradictory. The master, first officer and carpenter contradict most explicitly all the charges of the seamen as respects any deficiency of provisions, or any substantial complaints in regard